

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Ernest Guinn
County Attorney
El Paso, Texas

Dear Sir:

Attention: Mr. David W. Heath

Opinion No. O-3461

Re: Where A and B are standing
close together on the edge
of the highway and talking
together and D in his auto-
mobile runs into them, if
he be acquitted on a charge
of aggravated assault with
a motor vehicle as to A,
in a subsequent trial for
negligent homicide of B,
may he successfully raise
the plea of former jeopardy?

Your request for our opinion on the hereinabove caption-
ed question has been received. We quote from your letter in
part as follows:

"As the following case does not appear to have
been decided in Texas we ask your opinion thereon for
the benefit of ourselves and the court.

"Where A and B are standing close to each other on
the edge of the highway and talking together and D in
his automobile runs into them, if he be acquitted on
a charge of aggravated assault with a motor vehicle
as to A, in a subsequent trial for negligent homicide
of B, may he successfully raise the plea of former
jeopardy?"

Article 1, Section 14 of the Texas Constitution provides
that:

"No person, for the same offence, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offence, after a verdict of not guilty in a court of competent jurisdiction."

The same provision is also contained in the Code of Criminal Procedure. Article 8, Vernon's Annotated Code of Criminal Procedure.

There are no statutes defining the terms used or declaring the extent of the application of the right - only enactments providing when and how jeopardy may be pleaded. Arts. 508, 509 and 510 of Vernon's Annotated Code of Criminal Procedure read as follows:

Art. 508. "The only special pleas which can be heard for the defendant are:

"1. That he has been convicted legally, in a court of competent jurisdiction, upon the same accusation, after having been tried upon the merits for the same offense.

"2. That he has been before acquitted by a jury of the accusation against him, in a court of competent jurisdiction, whether the acquittal was regular or irregular."

Art. 509. "Every special plea shall be verified by the affidavit of the defendant."

Art. 510. "All issues of fact presented by a special plea shall be tried by a jury."

The courts are very liberal in construing the constitutional provisions, extending the rule to cases within its reason though not within its words. While statutes are to be strictly interpreted as against persons charged with crime, provisions introduced in their favor should be construed liberally; and the same distinction applies to a written constitution. Grisham v. State 19 Tex. Cr. Apps. 504.

Under the existing application of the principle of jeopardy, a distinction is drawn between jeopardy and former

Hon. Ernest Guinn, page 3

conviction and acquittal. The former is predicated upon a
prosecution discharged for valid causes without a verdict; the
latter pre-supposes and is based upon verdicts rendered. Grisham
v. State, supra.

Inasmuch as you predicate your question upon an acquittal
on a charge of aggravated assault with a motor vehicle, we
presume that you desire to know whether a plea of former ac-
quittal will lie under the facts stated.

In Texas there is a well recognized distinction between the
pleas of former conviction and former acquittal. The plea of
former conviction only requires that the transaction, or the
facts constituting it, be the same. Former acquittal, on the
other hand, requires not only that the transaction be the same
but also that the two indictments be susceptible of as sustain-
able by the same proof. It has been said that this distinction
is the result of the doctrine of carving. 12 Tex. Jur. p. 557,
Sec. 239; Wright v. State, 17 Tex. Cr. Apps. 152; Simco v. State,
9 Tex. Cr. Apps. 338.

Before an accused can interpose the defense of former ac-
quittal, the former trial must have been upon the same identical
criminal act for which the State is again seeking to prosecute
him. The crime must be the same in both cases though the
pleadings differ in immaterial circumstances. The same offense
means the identical criminal act or omission; not the same
offense eo nomine, or one of the same nature. 12 Tex. Jur. p.
554, Sec. 237. Williams v. State, 125 S. W. 42.

Where, as under the facts here submitted, more than one
person is killed or injured "at the same time," a difficult
question often arises as to whether the person responsible for
such injuries and/or deaths committed one offense or several
offenses within the rule relating to double jeopardy.

Where two or more wrongful acts are committed by the de-
fendant, as several shots or blows, even though closely con-
nected in point of time, if they are directed at different
persons and result in the injury or death of such persons, there
is apparently no question but that the offenses are distinct
and an acquittal of the murder of or assault upon one person
is not a bar to a prosecution for the murder of or assault upon
another. The cases generally, including those in Texas, are

Hon. Arnest Guinn, page 4

in accord on this point. 8 Ruling Case Law p. 151, Sec. 139; Augustine v. State, (Tex. Cr. Apps.) 52 S. W. 77; Skelton v. State, (Tex. Cr. Rep.) 10 S. W. (2d) 554.

In the latter case the accused, with a single barreled shotgun, fired at two men passing his house and they both fell, one mortally wounded, and, on the other running away, the accused reloaded his gun and shot him again. The court says that there were two separate and distinct assaults on the second man, and that in no event would the acquittal on the last assault upon the second man bar a prosecution for the murder of the other man. See also the case of Kelly v. State (Tex. Cr. Rep.) 68 S. W. 915, where the evidence showed that appellant, "grabbed his pistol and fired twice just as rapidly as he could," and killed two brothers in the same difficulty. He pleaded former acquittal of killing one in the trial for killing the other. The court held that the plea could not be sustained by the evidence, because it showed it was not one act of volition on the part of the appellant, but two shots, two separate and distinct intentions, two acts, two volitions, contemporaneous.

Where the results to different individuals were brought about by a single wrongful act, as a single shot or blow, however, the cases are in conflict as to whether separate offenses or only one offense was committed. Some cases have held that there are not separate offenses where there is but a single act, even though two or more persons are assaulted or killed thereby. Some of these cases so holding do so upon the ground that under such circumstances there is a single wrongful or criminal intent and therefore there cannot be several prosecutions without infringement of the rule against double jeopardy. Other courts, however, have pointed out that the charges and evidence upon the two prosecutions involving assault upon or murder of two different persons under such circumstances are not identical so as to create identity of offenses within the rule relating to double jeopardy.

From Bishop's Work on Criminal Law, (9th Edition, 1923) Section 1061, we quote as follows:

"Where the same blow wounds or kills two men, it is competent for the pleader to charge it as inflicted on the two; in other words, the prosecut-

Hon. Ernest Guinn, page 5

ing power may, if it pleases, treat it as one offence. But the indictment will be equally good if it alleges the beating or killing of one of them. Should the prosecutor choose the latter form, there is authority for saying that a jeopardy for the act viewed as a battery or homicide of one of the men will bar an indictment for it is an offence to the other; and there is other authority that will not. Obviously there is a difference between one volition and one transaction. On a view of our combined authorities there is little room for denial that in one transaction a person may commit distinct offences of assault or homicide upon different persons, and be separately punished for each. But if one by a single volition should discharge into a congregation of people a fire-arm loaded with peas for shot, and each of fifty different persons should be hit by a pea, it would be startling to affirm that he could be punished for assault and battery fifty times, and once for disturbing the meeting. Certainly it would violate the spirit, if not the letter, of our 'twice-in-jeopardy' guaranty; and every provision for the ease of persons accused of crime is, to be interpreted liberally, as extending to cases within its spirit, whether within the letter or not."

Our examination of the cases on this point in Texas and in other jurisdictions indicates that the difference in the conclusions reached by the various cases is brought about largely on the question of fact as to whether the intent of the defendant was single or plural.

The leading case in Texas upon this point is Spannell v. State, 203 S. W. 357, where the defendant intentionally shot and killed one Butler in alleged self-defense. A bullet fired at Butler killed the defendant's own wife at the same time. The killing of the wife was apparently unintended. Two indictments were returned against the defendant, one for killing his wife andthe other for the killing of Butler. The defendant was first tried upon the indictment for the killing of his wife. The case was tried on the theory that, if the defendant shot Butler in justifiable self-defense, then he was not guilty of the murder for the accidental shooting of his wife, and vice versa. He was acquitted upon the charge of killing his wife. His acquittal was pleaded in bar of the further prosecution of the charge of murder as to Butler, and the court of Criminal Appeals held that the failure of the trial court to admit

Hon. Ernest Guinn, page 6

evidence and submit to the jury the issues raised by the plea
of former acquittal required a reversal of the judgment of
the conviction of the murder of Butler. We quote from the
court's opinion as follows:

"If he shot at Butler and in the same act
killed Mrs. Spannell unintentionally, his guilt
or innocense of each of the homicides would de-
pend on whether in shooting at Butler he acted
with malice or in self-defense. Assuming that the
shots were fired at Butler only, and killed Mrs.
Spannell, appellant having no intent or volition
to injure her, to determine whether he was guilty
or innocent on his trial for her murder it was
necessary to decide whether in shooting at Butler
he acted in self-defense or with malice. On this
state of facts the decision that he was innocent
of the murder of Mrs. Spannell necessarily involves
the finding that appellant's act in firing at Butler
was not such as to constitute murder.

"It follows that, whether in shooting at Butler
appellant acted with malice, or was justified, if in
the same act, with no volition to injure his wife,
he killed her, there could be but one offense, and
the state, prosecuting under separate indictments
for each of the homicides, would be concluded as to
both by the judgment rendered in one of them. . ."
Cook v. State (Tex. Cr. Rep.) 63 S. W. 872.

The opinion approves the holding in the Cook case, supra,
where the question of the identity of the act and volition
resulting in two injuries was raised on a plea of former
acquittal. In the Cook case, the defendant fired two shots in
rapid succession at one person, one of the shots killing a
third person. A plea of former acquittal of assault with in-
tent to murder the person at whom the shots were fired was con-
sidered a bar to a prosecution for the murder of such third per-
son, the court stating that where there is one act, one intent,
one volition, as is evidenced by the testimony of the assailant
in this case, then the assailant cannot be convicted upon an act,
intent and volition for which he has been previously acquitted.

That the Texas cases put the stress on singleness of
intent, in determining whether one or several offenses have

Hon. Ernest Guinn, page 7

been committed in this type of case, is further illustrated in the court's opinion in the Spannell case, from which we quote at page 359 as follows:

"We do not understand the Ashton Case, 31 Tex. Cr. R. 482, 21 S. W. 48, the Augustine Case, 41 Tex. Cr. R. 59, 52 S. W. 77, 96 Am. St. Rep. 765, and the Keaton Case, 41 Tex. Cr. R. 627, 57 S. W. 1125, as varying from this view. In each of them the plea was denied upon the ground that the two homicides were the result of separate acts, but the principle controlling them is thus stated in the Ashton case, supra:

" 'The true test in such cases must be that, if the intent to kill the one is an intention formed and existing distinct from and independent of the intention to kill the other, the two acts cannot constitute a single offense." (underscoring ours)

Both the Spannell and the Cook cases were reversed because of the failure to submit to the jury a plea of former acquittal. The court in the Cook case observed that the rule in reference to pleas of this kind is, that if the plea shows upon its face that they are different transactions, independent of and not connected with each other, then it is proper for the court to sustain the State's motion to strike out the plea. But if the plea presents a question of fact, then it is a question for the jury, and not for the court. In other words, the rule to be deduced from these two cases is that where the offenses charged in different indictments or informations are so diverse as not to admit of proof that they are the same, the court may decide the issue without submitting it to the jury.

The facts submitted by you present the question of whether only one or several offenses are committed where two or more persons are injured or killed as the result of the single negligence of defendant, without any intent on his part to cause any injury.

We have been unable to find any Texas cases in which this specific question has been passed on by the Court of Criminal Appeals. In other jurisdictions there is a direct conflict on this point.

As under the facts submitted, these cases usually arise out of the death or injury of two or more persons caused by the negligent operation of the defendant's automobile. In State

Hon. Arnest Quinn, page 8

v. Fredland, (Minn.) 273 N. W. 353, the defendant's car collided with another car on a public highway resulting in the death of two persons in the other car. The defendant was charged in each of two indictments with murder in the third degree, one of said indictments being based on the death of one of said passengers and the other indictment on the death of the other passenger. Both indictments are the same in substance except as to name of the person killed; the same witnesses were produced before the grand jury, and their names were identical as indorsed upon each indictment. The defendant was acquitted on the charge in the first indictment and pleaded former acquittal when brought to trial on the other indictment. The court rejected the defendant's plea and held that the protection afforded by the plea of former jeopardy is not against the peril of second punishment, but against being again tried for the same offense. "The constitutional provision against double jeopardy has" the court said, "for its objective that no one shall be brought into danger of punishment for the same offense more than once. But neither in the Federal nor in our own constitution is there any prohibition against successive prosecutions if the wrongful act is the cause of separate and distinct offenses." The court held, further, that it is the <u>identity of the offense</u>, and <u>not of the act</u>, which is referred to in the constitutional guaranty against putting a person twice in jeopardy, and specifically, where two or more persons are injured in their persons, though it be by a single act, yet, since the consequences affect, separately, each person injured, there is a corresponding number of distinct offenses. Some of the other jurisdictions taking this view are Oklahoma (Fay v. State, 71 Pac. (2d) 768), and Illinois (People v. Allen, 14 N. E. (2d) 397). There is, however, a strong dissenting opinion in the Illinois case.

The opposite view - that a single act of negligence on the part of a defendant, which results in the involuntary killing or injuring of two or more human beings, is ordinarily a single offense and is subject to but one prosecution - is held in Iowa (State v. Wheelock, 250 N. W. 617); Tenn. (Smith v. State, 21 S. W. (2d) 400); and New Jersey (State v. Cosgrove, 135 Atl. 871). The basis for this view is, in our opinion, best expressed in the dissenting opinion of Justice Shaw in the Illinois case of People v. Allen, supra, from which we quote as follows on page 407:

"I am unable to concur with the views expressed in the foregoing opinion and because of the importance of the constitutional point involved feel it necessary

Hon. Ernest Quinn, page 9

to state my views.  It must be borne in mind that
under the rule announced in this case a citizen may
be tried an indefinite number of times for the
same criminal act until a jury is finally found
which will render a verdict suitable to the prosecu-
tion.  Under this rule, if a grossly negligent act
should result in a large number of deaths, the de-
fendant might be tried as many different times as
there were deaths involved.  Even though jury after
jury might find that he had not been grossly neg-
ligent, he could be compelled to return again
and again to stand trial on this one point, which
is the gist of the case.

"The crime involved is a single offense
against the peace and dignity of the People--i.e.
the reckless driving of an automobile.  This is an
offense under the Motor Vehicle Act whether or not
any one is injured or killed.  This identical
offense--i.e., reckless driving--becomes involuntary
manslaughter by virtue of the Criminal Code and
regardless of any intent of the defendant, if one or
more persons are killed and no matter how many or
how few are killed.  The defendant need have no
criminal intent of any kind, as the result of the
act, rather than the intent, is what determines the
character of the crime, and that character is fixed
by the happening of one death or many from the
same act.

"This has been so definitely held in so many
cases in other states as to make any review of the
authorities in this dissenting opinion entirely
unnecessary.  Some of these cases are referred to
in the majority opinion and no effort is made to
distinguish them, nor can they be successfully dis-
tinguished.  Many of the cases referred to in the
opinion are such as involve intentional acts on the
part of the defendant, and, therefore, not in point.
The Minnesota case relied upon has been severely
criticized and, in my opinion, runs contrary to the
better reasoning of the courts of many other states.

"It is my view that this opinion definitely
impairs that provision of the Constitution upon
which the defendant relies.  Under this rule a de-
fendant would be subjected to being put in jeopardy,

Hon. Ernest Guinn, page 10

not only twice but many times, for one criminal act. This is not only contrary to our constitution but oppressive to my personal sense of justice. It is to be hoped that the Supreme Court of the United States will sometime take occasion to make an authoritative decision on this important question. The courts of Minnesota, Oklahoma, and now of Illinois, have ranged themselves in opposition to the older line of cases which appear to me to have been better decided."

The case of People v. Barr (N. Y.) 181 N. E. 64, although not an automobile collision case, is an instructive case upon this subject. It involved the prosecution of the defendant on a charge of manslaughter for wrongfully causing the death of ten persons as the result of a fire, which the defendant should have avoided as alleged. The defendant was charged with negligence in failing to install a system of automatic sprinklers in the building where the fire occurred. All the deaths resulted from the same cause. The question presented for the consideration of the court was whether it involved a single offense resulting in the death of ten persons or whether the defendant was guilty of ten offenses. The circumstances of the death in the various cases were identical. The trial court held that ten offenses were presented. This holding was reversed by the Court of Appeals, which held that only a single offense was involved. The court said:

"In our judgment, the beneficent purpose of the statute should not be nullified by a narrow technical construction which would, while apparently following the letter of the law, destroy its spirit. We believe that to permit ten separate indictments before ten different grand juries without the direction of the court and ten separate trials on the charge of manslaughter, all growing out of the failure of the relators to install an automatic sprinkler system in the building in question, would be contrary to the statute. True it is that ten indictments are not involved in this case; still the principle here asserted is the same. There is no pretense that relators had any intent in fact to commit the crime of manslaughter. The alleged crime was accidental and involuntary, not the result of an affirmative intentional act, but the result of negligent failure to act."

(Underscoring ours)

The negligence of the defendant is the gist of the offense of aggravated assault with an automobile (Guajardo v. State, Tex. Cr. Apps., 159 S. W. (2d) 85) and also of the offense of negligent homicide. (Menefee v. State, Tex. Cr. Apps., 87 S.W. (2d) 478). The defense of contributory negligence is not available to either a prosecution for aggravated assault with an automobile (Guajardo v. State, supra) or negligent homicide. (Stover v. State, Tex. Cr. Rep., 104 S. W. (2d) 48).

While you do not state in your submission of the facts that D is charged in both informations with the identical negligence, we presume from your able brief that such is the case and base our opinion on that premise.

Negligent homicide consists in the doing of an act, lawful or unlawful, in a careless or negligent manner, when there is apparent danger of causing the death of some one, but with no apparent intention to kill. Barfield v. State (Tex. Cr. Apps.) 43 S. W. (2d) 106. See also Arts. 1230-1243, V.A.P.C.

Article 1149 of Vernon's Annotated Penal Code reads as follows:

"If any driver or operator of a motor vehicle or motorcycle shall wilfully or with negligence, as is defined in the Penal Code of this State in the title and chapter on negligent homicide, collide with or cause injury less than death to any other person he shall be held guilty of aggravated assault, and, upon conviction, shall be punished by fine not less than Twenty-five ($25.00) Dollars, nor more than One Thousand ($1,000.00) Dollars, or by imprisonment in jail not less than one month nor more than two years, or by both such fine and imprisonment; unless such injuries result in death, in which event the driver or operator of any motor vehicle or motorcycle shall be dealt with under the general law of homicide."

Article 1233 of Vernon's Annotated Penal Code reads as follows:

"The want of proper care and caution distinguishes this offense from excusable homicide. The degree of care and caution is such as a man of ordinary prudence would use under like circumstances."

Hon. Ernest Guinn, page 12


This article constitutes a definition of "negligence" applicable to prosecutions, both for aggravated assault with an automobile and for negligent homicide.  Young v. State, 47 S. W. (2d) 320; Guajardo v. State, 139 S. W. (2d) 85.

Under the facts here involved, D was acquitted of the offense of aggravated assault with an automobile on A.  By virtue of such verdict, the jury necessarily found that D was not negligent.  Negligence is not only a material element of said offense but the gist thereof.  If the State should now be permitted to prosecute him for the negligent homicide of B, in which that same act of negligence of D is also the gist of this offense, we are of the opinion that he would be subjected to a second prosecution for the same material issue - his negligence - for which he had once before been prosecuted and acquitted.

From our study of the principles announced by the Texas cases, we are lead to the conclusion that where the principle element of the first information or indictment is also the principle element of the second information or indictment, the "two offenses" are identical and an acquittal on the trial of the first will bar a subsequent prosecution on the second.

While the offense of aggravated assault with a motor vehicle and the offense of negligent homicide are different offenses in name, they differ only in immaterial allegations. They are both predicated on the identical criminal act or omission - the negligence of the defendant.

Those jurisdictions, such as Illinois, which hold that when two or more persons are injured by a single criminal act, there are as many separate and distinct offenses as there are persons injured by the unlawful act, base their conclusions on the proposition that all the facts charged in each indictment must be the same.  They hold that the fact that the names of the injured persons are different in the two indictments makes them separate offenses.  To illustrate this strained and technical view, we quote from the majority opinion in the Illinois case of People v. Allen, supra, as follows:

> "Could a jury in the former case, which charged the manslaughter of Ray Duran, have returned a verdict for the manslaughter of Charles Klafter?  In indictments for offenses against persons or property the name of the person injured must be stated, if known.  The necessity for stating the name of the person injured is to enable the defendant to plead either a former

Hon. Ernest Guinn, page 13

> acquittal or conviction in case of a second prosecu-
> tion by the same offense. . . . an accused cannot be
> tried for the manslaughter of any other person than
> the one charged by the indictment upon which he is
> then being tried. . . In order for one prosecution
> to be a bar to another, it is not sufficient to show
> that the act is the same, but it must be shown that
> the offense, also, is the same in law and in fact."

That this line of reasoning is not followed in Texas is
established by the Spannell case and many other Texas cases.
In Texas it is required only that the crime must be the same
though the pleadings differ in immaterial circumstances. The
same offense means the identical criminal act or omission;
not the same offense eo nomine or one of the same nature.
12 Tex. Jur. p. 555.

The offenses are not the same when separate offenses dif-
fering in all their elements are set out in the indictment, al-
though they arise from the same transaction. 12 Tex. Jur. 557.
This is illustrated by the recent Texas case of Powell v. State,
14 S. W. (2d) 894, where it was held that the acquittal of a
motorist prosecuted for murder for striking a pedestrian
did not under a plea of former acquittal bar a prosecution
for failing to stop and render aid to the pedestrian, since
the motorist could be both innocent of murder and guilty of
not stopping. The court here conceded that the killing of
the pedestrian and the defendant's failure to stop and render
aid occurred at or about the same time.

Bishop on Criminal Law (9th Edition, 1923) Section 1051,
states as follows:

> "Just principle seems to sustain the follow-
> ing: They (offenses) are not the same when . . .
> (3) each indictment sets out an offense differing
> in all its elements from that in the other, though
> both relate to one transaction. . ."

Those jurisdictions following the view expressed in the
majority opinion of the Illinois case, in negligence cases,
apparently look at the results of the offense rather than at
the offense itself. We are of the opinion that such a view is
incompatible with the spirit of the constitutional guaranty.

As stated by Bishop's Criminal Law at page 226, "the real
thing punishable therefore is his carelessness." It is this
carelessness - negligence - that is made criminal in the Texas

Code relating to negligent homicide and aggravated assault with an automobile. While we have found no Texas case involving a negligence case such as presented by the facts here involved, we construe the Texas cases, on the general question, as committed to the view that only one offense is committed where several persons are injured or killed by the single negligent act of the defendant.

You are, therefore, respectfully advised that it is the opinion of this Department that, under the facts stated, D may successfully raise the plea of former acquittal.

APPROVED JUN 14, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Edgar Pfeil
Assistant

EP:N



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN